IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ALVINE ABANDA ET AL., | * | |
| Plaintiffs, | * | |
| v. | * | Civil No. 23-1071-BAH |
| OURBLOC LLC ET AL., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION

On August 29, 2024, upon Plaintiffs' unopposed motion for default judgment, the Court entered default judgment against Defendant Armel Tenkiang ("Tenkiang") on Plaintiffs' unjust enrichment claim and against CreditDap LLC on Plaintiffs' breach of contract claim. *See* ECFs 36 and 37.[1]  Not quite a month later, Tenkiang, with the assistance of counsel, filed a motion to vacate entry of default, which the Court construed as seeking to set aside both the default and default judgment. *See* ECF 39 (motion); ECF 40 (memorandum in support). Tenkiang's motion cited Fed. Rs. Civ. P. 54, 55, and 60(b)(1), and argued that default (and default judgment) should be set aside on the grounds that Tenkiang had never been properly served so his failure to respond to the complaint was due to mistake, inadvertence, surprise, or excusable neglect and that he had meritorious defenses. ECF 39, at 1 (citing Rule 55); ECF 40, at 1–2 (citing Rules 54 and 55); ECF

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

40, at 4 (citing, for the first time, Rule 60(b)(1)).[2]  Evaluating the arguments made therein, the Court denied this motion.  ECF 51 (memorandum opinion); ECF 52 (order).

Tenkiang, now proceeding pro se, has filed a second motion for relief from default judgment, this time grounding his arguments in Rule 60(b)(3) (based on Plaintiffs' counsel's purported misstatements or omissions) and in Rule 60(b)(4) (based on voidness for lack of personal jurisdiction), arguments which were not asserted in the prior motion.  ECF 60 (hereinafter "Rule 60 motion").  Tenkiang has also filed two motions for sanctions against Plaintiffs' counsel under Fed. R. Civ. P. 11.  ECFs 63 and 67.  Plaintiffs' counsel has also filed a motion for extension of time to file a motion to substitute Plaintiff Julia Ndumu under Fed. R. Civ. P. 25.  ECF 70.  Each of these motions are opposed and ripe for the Court's review.  *See* ECF 61 (Plaintiffs' opposition to Rule 60 motion); ECF 62 (Tenkiang's reply regarding Rule 60 motion); ECF 64 (Plaintiffs' opposition to first motion for sanctions); ECF 65 (Tenkiang's reply regarding first motion for sanctions); ECF 68 (Plaintiffs' opposition to second motion for sanctions); ECF 69 (Tenkiang's reply regarding second motion for sanctions); ECF 72 (Tenkiang's opposition to motion to for extension of time); ECF 73 (Plaintiffs' reply regarding motion for extension of time).[3]  The Court addresses each of the ripe motions in turn.

I. **TENKIANG'S RULE 60 MOTION (ECF 60)**

Tenkiang moves for relief from default and default judgment under Rule 60(b)(4) and Rule 60(b)(3).  *See* ECF 60.  He argues that because he has never been adequately served with process, the Court did not have personal jurisdiction over him, so the default judgment is void.  *See id.* at

---

[2] Much of the motion and memorandum in support incorrectly refer to vacating default even though default judgment had been entered by that time.

[3] Tenkiang also filed a motion for leave to file a surreply, ECF 74, which he later withdrew, ECF 76, so the Court will not consider it or Plaintiffs' opposition to that filing, ECF 75.

2–3.  Tenkiang also argues that Plaintiffs improperly "relied on unverified hearsay to prop up defective service," and that this Court does not have specific jurisdiction over him.  *Id.* at 3.  Tenkiang next argues that vacatur of the default judgment is warranted under Rule 60(b)(3) due to the misrepresentations of facts (including the mischaracterization of who received the WhatsApp messages discussed in the Court's prior memorandum opinion), "fabrication and unverified assertions" by the investigator, and the "failure to use basic blockchain tracing . . . and failure to produce ordinary communications."  *Id.* at 5 (capitalization and emphasis omitted).  Tenkiang attaches to his motion exhibits including leases, utility bills, and credit card statements which, he alleges, tend to show that he lived in Portugal in 2022 and Kirkland, Washington, beginning January 2023.  *See* ECF 60-4 through ECF 60-6.[4]

    Plaintiffs argue that Tenkiang's motion is an improper successive Rule 60(b) motion, that it should be construed as a motion for reconsideration, and that whether treated as a Rule 60(b) motion or a motion to reconsider, it is untimely.  *See* ECF 61, at 5–6.  Plaintiffs point out that Tenkiang fails to explain why he filed this motion nearly a year after the default judgment was entered despite the fact that the motion references evidence and raises arguments that could have been presented earlier.  *See id.* at 7.  Plaintiffs also contend that the Court has already decided the issues Tenkiang now raises.  *Id.* at 7–8.  In reply, Tenkiang asks the Court to "construe and decide his previously-filed motion (ECF 60) under Federal Rule of Civil Procedure 54(b) and to revise

---

[4] A number of Tenkiang's arguments go to the merits of Plaintiffs' claims.  *See, e.g.*, ECF 60, at 4 (contesting that Plaintiffs have established the elements of unjust enrichment), *id.* at 5 (pointing out a supposed "evidentiary gap" between Plaintiffs' "tracing narrative without fact-finding").  The Court does not address these points here as they are not relevant to the Rule 60 analysis.  Tenkiang also provides evidence which appears to be relevant to the merits of his defense.  *See, e.g.*, ECF 60-7.  The Court will not evaluate this evidence beyond noting its use as a proffer of evidence of a meritorious defense.

the Court's July 7, 2025 interlocutory order to correct clear error causing manifest injustice and in light of new evidence." ECF 62, at 1.

As an initial matter, the Court must determine whether Rule 60(b) or Rule 54(b) applies. Tenkiang clearly moved under Rule 60 as the motion is titled "Defendant's Motion for Relief From Default and Default Judgment Pursuant to Rule 60(b)(4) and Rule 60(b)(3)." ECF 60, at 1. Plaintiffs' response also applies Rule 60. *See* ECF 61. In reply, Tenkiang changes course and contends that Rule 54(b) applies because:

> Mr. Tenkiang's September 2024 filing sought relief under Rule 55(c)/60(b)(1) on an excusable-neglect/wrong address theory—i.e., that Plaintiffs mistakenly served papers at an address where he did not then reside. The July 7, 2025 ruling later evaluated that through the lens of Rule 55(c)/60(b). By contrast, this memorandum addresses a different, threshold defect: jurisdiction and notice were propped up by misstatements (discussed below) that the July 7 ruling treated as true. In short, the first motion addressed Plaintiffs' mistake in service; this motion addresses the Court's mistake in crediting misrepresented facts to sustain the default posture. Those are distinct arguments requiring different evidence and analysis.

ECF 62, at 2. Thus, Tenkiang attempts in reply to seek reconsideration of the July 7, 2025 memorandum opinion and order denying the motion to vacate, not the August 29, 2024 default judgment opinion and order. But his motion makes clear that he contests the validity of the default judgment entered against him *See* ECF 60, at 2–6. "The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006). Further, a motion made under Rule 54(b) would be untimely. *See* Loc. R. 105.10 (D. Md. 2025) ("Except as otherwise provided in Fed. R. Civ. P. 50, 52, 59, or 60, any motion to reconsider any order issued by the Court shall be filed with the Clerk not later than fourteen (14) days after entry of the order."); ECFs 36 and 37 (default judgment and accompanying memorandum opinion entered on August 29, 2024); ECFs 39 and 40 (first motion to vacate and memorandum filed September 24, 2024);

ECFs 51 and 52 (memorandum and order denying motion to vacate entered July 7, 2025); ECF 60 (instant Rule 60 motion filed August 19, 2025).[5]

If Tenkiang now asks this Court to apply Rule 54(b) to his request for reconsideration of the default judgment order, that rule is inapplicable to final orders since Rule 54(b) only "provides the framework for motions to alter *interlocutory* orders in civil matters." *United States v. Tyson*, No. 3:24-CR-34, 2026 WL 313468, at *1 (E.D. Va. Feb. 5, 2026) (emphasis added). And while the parties, counsel, and the Court have repeatedly acknowledged the finality of the Court's August 29, 2024 Order through reference to, and application of, Rule 60 in their subsequent filings,[6] to the extent it needs clarifying, the Court reaffirms that the August 29, 2024 default judgment order was a *final* order. The decision granted the motion for default judgment as to Tenkiang and CreditDap but denied the motion as to all the other company defendants.[7] *See* ECF 37, at 1 (denying the motion without prejudice as to those defendants). The Court ruled that Plaintiffs had

---

[5] Tenkiang, acting pro se, attempted to file a Rule 60(b)(4) motion on July 8, 2025, which was rejected because he was still represented by counsel at that time. *See* ECF 53. Tenkiang's former counsel was permitted to withdraw on July 15, 2025, the day after he filed his motion to do so. *See* ECF 56. Tenkiang thereafter, acting on his own behalf, could have timely moved for reconsideration of the July 7 memorandum opinion and order, but he did not do so.

[6] While Tenkiang's counsel's initial motion to vacate cited Rule 54(b) once in that filing, *see* ECF 40, at 1, that motion did not acknowledge that default *judgment*, rather than mere default, had been entered, and the motion clearly applied Rule 55(c), *see id.* at 2, and Rule 60(b)(1), *id.* at 4, not Rule 54(b).

[7] The Court acknowledges that entry of default judgment against only some defendants who are alleged to be jointly and severally liable is ordinarily disfavored due to the risk of inconsistent judgments. *See Cincinnati Ins. Co. v. Hunt*, No. 7:22-CV-00189-M, 2024 WL 4828095, at *9–10 (E.D.N.C. Feb. 23, 2024) (citing, e.g., *Frow v. De La Vega*, 82 U.S. 552, 554 (1872) and Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2690 (4th ed.)). However, that risk is not present here where no defendants appeared in the case and all were in default. *See* § 2690 Default Judgments in Actions Involving Several Defendants, 10A Fed. Prac. & Proc. Civ. § 2690 (4th ed.) ("As a general rule then, when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, *or all defendants have defaulted*." (emphasis added)).

5

not established liability as to those defendants. *See* ECF 36, at 12–14, at 17–21, 23. While these claims were not expressly dismissed against the other company defendants at that time, they clearly could not proceed as pled in the complaint, and the decision was meant to dispose of all the issues pending before the Court. *See Martin v. Duffy*, 858 F.3d 239, 246–47 (4th Cir. 2017) ("[A]n order that fails to explicitly address or dispose of all claims presented to the court may nevertheless qualify as a final, appealable order '[i]f the language used [in the order] is calculated to conclude all the claims before the district court,'. . . or 'where 'the district court obviously was not trying to adjudicate fewer than all the pleaded claims[.]'" (first quoting *Munson Transp., Inc. v. Hajjar*, 148 F.3d 711, 714 (7th Cir. 1998), then quoting *Perkin-Elmer Corp. v. Computervision Corp.*, 680 F.2d 669, 670 (9th Cir. 1982)) (additional citations omitted)); *see also AirFacts, Inc. v. de Amezaga*, 909 F.3d 84, 91 (4th Cir. 2018); *Klein v. Campbell*, No. 22-1497, 2023 WL 3845303, at *4 n.6 (4th Cir. June 6, 2023). Thus, since Tenkiang's motion challenges the final default judgment order, Rule 60 applies.

Rule 60(b)(3) permits relief from judgment based on "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." To prevail under Rule 60(b)(3), the following conditions must be met: "(1) the moving party must have a meritorious defense; (2) the moving party must prove misconduct by clear and convincing evidence; and (3) the misconduct prevented the moving party from fully presenting its case." *Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir. 1994). "A motion under Rule 60(b) must be made within a reasonable time—and for [motions made under (b)(3),] no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

"Under Rule 60(b)(4), a district court may relieve a party from a final judgment or order that is void." *Garcia Fin. Grp., Inc. v. Virginia Accelerators Corp.*, 3 F. App'x 86, 88 (4th Cir.

6

2001) (citing Fed. R. Civ. P. 60(b)(4)). The grounds for relief under Rule 60(b)(4) are purposefully narrow "[t]o promote finality and to discourage circumvention of the appellate process." *Id.* "[A] judgment may be vacated for voidness under Rule 60(b)(4) only if the rendering court lacked personal jurisdiction, subject matter jurisdiction, or acted in a manner inconsistent with due process of law." *Id.*; *see also Koehler v. Dodwell*, 152 F.3d 304, 306–07 (4th Cir. 1998) (explaining that "any judgment entered against a defendant over whom the court does not have personal jurisdiction is void" (citation omitted)). "Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." *Koehler*, 152 F.3d at 306 (citing *Armco, Inc. v. Penrod–Stauffer Bldg. Sys., Inc.,* 733 F.2d 1087, 1089 (4th Cir. 1984)). "[A] movant claiming relief under Rule 60(b)(4) need not establish a meritorious defense." *Garcia*, 3 F. App'x at 88 (citing *Broadcast Music, Inc. v. M.T.S. Enters., Inc.,* 811 F.2d 278, 280 (5th Cir. 1987)); *see also Peralta v. Heights Med. Ctr.*, 485 U.S. 80, 84–86 (1988). However, a nearly unanimous Supreme Court[8] recently clarified that "[l]itigants seeking relief under Rule 60(b)(4) must comply with Rule 60(c)(1) and file a motion within a reasonable time." *Coney Island Auto Parts Unlimited, Inc. v. Burton Tr. for Vista-Pro Auto., LLC*, 607 U.S. ___, No. 24-808, 2026 WL 135998, at *4 (U.S. Jan. 20, 2026). In so holding, the Supreme Court noted that it "cannot divine any principle requiring courts to keep their doors perpetually open to allegations of voidness." *Id.* at *3. Relevant to the motion at hand, the Supreme Court expressly rejected the argument that "failure to perform proper service [ ] is different from other legal errors that might render a judgment void." *Id.* at *4. Thus, the Court held that "the operative language clearly requires parties to make Rule 60(b) motions within a reasonable time," even if that motion is premised on improper service. *Id.*

---

[8] Justice Sotomayor concurred in the judgment only.

Tenkiang has now presented the Court with evidence that his residence in May 2023 was in Kirkland, Washington, not Bear, Delaware, which may make service at the Bear address in May 2023 improper.[9] However, Tenkiang unquestionably did not present this evidence until just under a year after default judgment was entered, at least ten months after Tenkiang himself was aware of the judgment, and only after his Rule 60(b)(1) motion was denied. Tenkiang has not provided reasonable justification for not including this evidence with the Rule 60(b)(1) motion which he filed through counsel despite the fact that it was available at that time.[10]

The Court begins (and ends) its analysis with timeliness. Apart from the one-year time bar for (b)(1)–(3) motions, whether a motion has been filed within a reasonable period of time under Rule 60(c)(1) is fact- and case-specific. *See ServicePower, Inc. v. Smart Merch., LLC*, Civ. No. 21-02114-SAG, 2023 WL 7708259, at *3 (D. Md. Nov. 14, 2023) (finding that defendant "has been reasonably prompt by filing this motion within 42 days of receiving notice of the action and the default judgment"); *Justus v. Clarke*, 78 F.4th 97, 106 (4th Cir. 2023) (finding a Rule 60(b)(6)

---

[9] It is important to note that the Court does not conclude that service at this address was, in fact, improper. Had the Bear, Delaware address been Tenkiang's habitual place of abode in May 2023, there is nothing before the Court that would warrant finding service improper where an affidavit of service was filed indicating that a private process server left the summons and complaint at the Bear, Delaware address with Jessie Tenkiang on May 31, 2023. *See* ECF 20 (proof of service). The affidavit of Jessie Tenkiang offered to contradict this affidavit (attached to the first motion to vacate) contains only two substantive sentences: "I have never received court documents addressed to Armel Tenkiang hand delivered to me last year by anyone. On the supposed date of delivery, I was on vacation in Seattle." ECF 40-2, at 1 ¶ 3. No other evidence was offered in support of this contention. Moreover, Delaware law permits service of process on an individual "by leaving [the service documents] at that individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein." Del. Super. Ct. Civ. R. 4(f)(1)(I).

[10] The Court notes that while the prior motion to vacate did assert that Tenkiang was never properly served, that motion was not made under Rule 60(b)(3) or (b)(4), and counsel did not argue that the default judgment was void. *See generally* ECFs 39 and 40. As described below, that motion also did not include the evidence Tenkiang now provides in support of his argument that he lived in Kirkland, Washington, in May 2023 at the time of service.

motion filed five years after judgment timely due to movant's documented extensive mental disabilities). "Reasonableness, as shown by the movant, is essentially judged by looking to 'the delay . . . from the time the party is deemed to have notice of the grounds for its Rule 60(b) motion.'" *Holland v. Virginia Lee Co.*, 188 F.R.D. 241, 248 (W.D. Va. 1999) (quoting *Jones v. City of Richmond,* 106 F.R.D. 485, 489 (E.D. Va. 1985)).

The Court first notes the problem of the successive Rule 60(b) motion. "Relevant here, a 'successive Rule 60(b) motion' is an 'inappropriate vehicle[ ] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion.'" *Choice Hospice, Inc. v. Axxess Tech. Sols., Inc.*, 125 F.4th 1000, 1011–12 (10th Cir. 2025) (alterations in original) (quoting *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). "A motion under Rule 60(b) is not appropriate when a party seeks to re-litigate the merits of a motion or ask the district court to 'change its mind.'" *Gilliand v. Koch Trucking, Inc.*, Civ. No. JFM 11-3073, 2015 WL 2395148, at *2 (D. Md. May 19, 2015) (quoting *Classen Immunotherapies, Inc. v. King Pharmaceuticals, Inc.,* 981 F. Supp. 2d 415, 419 (D. Md. 2013)); *see also Stembel v. Gutierrez*, Civ. No. CBD 06-127, 2008 WL 11509684, at *2 (D. Md. Aug. 21, 2008) ("A motion for reconsideration under Rule 60(b) should not be used to raise new arguments or supporting facts that were available for presentation when the original motion was briefed." (citing *Johnson v. Montminy*, 289 F. Supp. 2d 705, 705 (D. Md. 2003))).

Even where only one Rule 60(b) motion has been filed, "the Fourth Circuit has upheld the denial of Rule 60(b) motions that were filed as short as two to four months after the entry of judgment where 'no valid reason [was] given for the delay.'" *Peterman v. Ramod Brewers, LLC*, No. 4:21-CV-00156-M, 2025 WL 1296216, at *3 (E.D.N.C. May 5, 2025) (quoting *McLawhorn*

9

*v. John W. Daniel & Co., Inc.*, 924 F.2d 535, 538 (4th Cir. 1991)) (finding Rule 60(b) motion untimely when it was filed nine months after default judgment and five-to-six months after defendants learned of judgments); *see McLawhorn*, 924 F.2d 535 (three-and-a-half month delay with no explanation not reasonable); *Cent. Operating Co. v. Util. Workers of Am., AFL-CIO*, 491 F.2d 245, 253 (4th Cir. 1974) (affirming denial of Rule 60(b)(1) motion after unexplained four month delay between notice of default judgments and motion)[11]; *Consol. Masonry & Fireproofing, Inc. v. Wagman Const. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967) (delay of two-and-a-half months not reasonable and conclusory assertion of meritorious defense not sufficient)); *Nat'l Org. for Women v. Operation Rescue*, 47 F.3d 667, 669 (4th Cir. 1995) (affirming district court's finding that delay of one year after change in law—the basis for the Rule 60(b) motion—was not reasonable).

More recently, the Fourth Circuit has affirmed the denial of a pro se litigant's Rule 60(b) motion made eleven months after the judgment where the movant did "not dispute that all the evidence underlying his Rule 60(b) motion was available to him when he (through counsel) was litigating the motion to dismiss the complaint," and where he did "not argue that his reasons for delay raised complicated factual or legal issues, and in any event, these reasons were strictly within [the movant's] knowledge." *Ho Won Jeong v. Cabrera*, 799 F. App'x 185, 186 (4th Cir. 2020).

Tenkiang could have presented the Court with the evidence of his Washington address when he timely filed his first Rule 60 motion in September 2024. Rather, the evidence accompanying that motion did not establish that Tenkiang resided in Washington in May 2023. In

---

[11] In *Central Operating Co.*, the Fourth Circuit found the district court's judgment void of lack of service. *See* 491 F.2d at 251. But the timeliness analysis, which the Fourth Circuit discussed only in the context of Rule 60(b)(3), now applies to Rule 60(b)(4) motions as well. *See Coney Island Auto Parts Unlimited, Inc.*, 607 U.S. ____, No. 24-808, 2026 WL 135998, at *4.

fact, Tenkiang's affidavit in support of that motion only stated that he had "lived in Kirkland, Washington since 2023," without specifying *when* in 2023 he purportedly lived there. ECF 40-1, at 1 ¶ 5. The memorandum in support of that earlier motion provided slightly more detail in stating that "[a]t the time this lawsuit was filed, Defendant was living at his current home in Kirkland, Washington where he has resided since *December* 2023 with his wife," ECF 40, at 5 (emphasis added), which would be several months after service was allegedly perfected on May 31, 2023, ECF 35, at 3 (citing ECF 20, at 1). Tenkiang did not submit any other evidence to support the motion beyond offering his own one-page affidavit and a one-page affidavit from his mother. *See* ECF 40-2. These affidavits provided only two substantive sentences generally denying service and making no reference whatsoever to Tenkiang's habitual place of abode. *Id.* Tenkiang also attached to the reply his Delaware driving record showing that his license expired in 2015, ECF 49-2, and a check mailed to him at a Pennsylvania address in 2021, ECF 49-3, neither of which established that he resided in Kirkland on May 31, 2023. It was not until Tenkiang filed this second Rule 60(b) motion that the Court received any evidence beyond perfunctory self-serving affidavits suggesting that Tenkiang actually lived in Kirkland, Washington, in May of 2023. *See* ECF 60-4 through ECF 60-6.

Tenkiang's reason for not including the evidence of residence in Washington sooner does not justify the delay. He asserts that the delay was warranted here because "[t]he certified Delaware dockets took months to obtain and arrived only recently; they directly disprove the supposed 2023 appearance. Additional residence records span 2013–2025 and required international retrieval (e.g., a Portugal lease signed by hand, later scanned and transmitted)." ECF 62, at 4. But Tenkiang need only have provided evidence of his Kirkland, Washington, residence in and around May of 2023 to effectively raise the issue and could have done so when he initially

11

raised the issue of service in September of 2024. Tenkiang offers no reason for the delay in providing the Kirkland lease, energy bills, renters' insurance documents, and credit card statements, all of which were surely in his own possession (or readily accessible) in 2024, until nearly one year after the Court's default judgment and at least ten months after Tenkiang's awareness of the judgment. There is simply no reason why these items could not have been included in Tenkiang's prior Rule 60(b)(1) motion.[12] The Court is also mindful of the fact that Tenkiang is currently without counsel. However, while "[a] document filed pro se is to be liberally construed[,]" *Ho Won Jeong*, 799 F. App'x at 186 (citing *Erickson v. Pardus,* 551 U.S. 89, 94 (2007), even on a Rule 60(b) motion, "this solicitude does not transform the district court into an advocate for the pro se litigant," *id.* (citing *United States v. Wilson,* 699 F.3d 789, 797 (4th Cir. 2012)). The Court therefore finds Tenkiang's Rule 60(b)(3) and (b)(4) motion untimely and denies it on that basis.[13]

---

[12] In his third declaration, attached to the reply, Tenkiang asserts that "[b]ecause doxxing can harm an independent developer, [he] minimize[s] retention of personal documents (e.g., leases)." ECF 62-1, at 1 ¶ 4. He notes that he "obtained copies from counter-parties and platforms (e.g., landlords, acquaintances, PI)." *Id.* Tenkiang does not explain why he could not have obtained these copies sooner. And even assuming this practice justified the nearly-year-long delay in obtaining copies of the relevant lease, this still does not explain his failure to provide copies of, for example, the February 2023 Puget Sound Energy bill, *see* ECF 60-4, at 9, the State Farm renters insurance policy he applied for in January 2023, *id.* at 11, or his own credit card statements showing use at Kirkland, WA businesses in May 2023, ECF 60-6, at 1–2, that he now provides.

[13] Tenkiang, acting on his own behalf, attempted to file a Rule 60(b)(4) motion on July 8, 2025 (the day after the Court's denial of the Rule 60(b)(1) motion), but that motion was returned as undocketed because Tenkiang was represented by counsel at that time. *See* ECF 53. Regardless, even if the motion had been accepted in July 2025, the delay of just over ten months (as opposed to just over eleven months) would still not be reasonable here, where that information could certainly have been provided with the first motion. And while it has not been suggested, there is no basis here to afford Tenkiang relief based on any possible negligence of his counsel. *See Al-Sabah v. Agbodjogbe*, No. 20-2375, 2021 WL 5176463, at *2 (4th Cir. Nov. 8, 2021) (finding that "even if [counsel] was grossly negligent, Defendants cannot establish diligence necessary to succeed on their Rule 60(b)(6) motion").

Tenkiang points to the Court's apparent mistake in the July 7 ruling that a declarant who received WhatsApp messages indicating awareness of the pending lawsuit was non-party Abanda Abanda, not Plaintiff Alvine Abanda, and asserts that "[e]levating a non-party statement to plaintiff testimony skewed the notice/jurisdiction analysis."  ECF 62, at 3.  But even if the Court erred in writing that the recipient of the messages was Alvine Abanda, that fact does not change the Court's ultimate conclusion as it does not alter the finding that the messages were sent by Tenkiang.  Regardless of who received the text message, the evidence tends to show that Tenkiang had actual knowledge of the suit when it was pending.[14]  Moreover, any error in recounting the recipient of the messages has no bearing on the Court's finding now that Tenkiang's Rule 60 motion is untimely.

The Court further understands that the statement by the investigator relied upon by Plaintiffs' counsel suggesting that Tenkiang provided the Bear address to a Delaware court in May 2023 may have had a different meaning than the one assumed by Plaintiffs' counsel (and, in turn, the Court).  In its report, the investigative firm stated: "On 05/24/2023, Inv. Jennifer Smagala responded to the Courthouse and revealed the defendant provided 906 Mather Drive Bear DE 19701 as his legal address."  ECF 35-23.  While the Court certainly does not fault Plaintiffs' counsel for reading this to mean that *Tenkiang* provided the address in May 2023, another reading could mean that the *investigator* learned in May 2023 that Tenkiang had previously provided the

---

[14] The WhatsApp messages, sent May 3, 2023, say: "Loser . . . You can read this over. Considering the fact that you were the CEO of [O]urbloc during the occurrence of this we'll need you present for the case. With or [without] your cooperation. We are denying all allegations and will countersue."  ECF 46-1, at 3 ¶ 5.  The recipient, Abanda Abanda, declared under penalty of perjury that "[t]he message was sent from a number I know to be Armel Tenkiang's."  *Id.* at 2 ¶ 3.  The messages were accompanied by "an attachment of the Summons and a copy of the Complaint in this action, which he then recalled," so they appear blurred on the screenshot of the messages.  *Id.* at 3 ¶ 6.

Bear address. But Plaintiffs' counsel's reasonable reliance on what an investigator determined Tenkiang's residence to be (even if it turned out to be wrong) still constituted prima facie evidence of proper service that Tenkiang's first Rule 60(b) motion failed to rebut.[15] Regardless, like the arguments related to the WhatsApp messages, it does not bear on the Court's timeliness analysis here.[16] Since it is untimely, Tenkiang's Rule 60(b)(3) and (b)(4) motion, ECF 60, will be denied.

## II.  TENKIANG'S MOTIONS FOR SANCTIONS (ECF 63 AND ECF 67)

Tenkiang twice moves for sanctions against opposing counsel under Rule 11. *See* ECFs 63 and 67. Specifically, he takes issue with "[o]ne sentence in Mr. Hyland's sworn January 5, 2024 declaration asserts that '[i]n May 2023, Armel Tenkiang provided the Bear address as his home address in connection with a failure to appear issue in the New Castle County (Delaware) Court of Common Pleas.'" ECF 63, at 1. Tenkiang contends that "[t]hat assertion is not supported by the public record and was later cited by the Court in denying Rule 60 relief." *Id.* He asks the Court to "strike the sentence, require a short correction, take judicial notice of the public dockets, preclude further reliance on the inaccurate premise, and issue a written admonition for failure to conduct a reasonable inquiry." *Id.* (citing Fed. R. Civ. P. 11(c)(4)). Tenkiang also contends that

---

[15] "[A]s a general principle, '[a] signed return of service constitutes prima facie evidence of valid service, which can be overcome only by strong and convincing evidence.'" *Ramsay v. Sanibel & Lancaster Ins., LLC*, No. 2:11CV207, 2015 WL 3830891, at *6 (E.D. Va. June 19, 2015) (quoting *Homer v. Jones–Bey,* 415 F.3d 748, 752 (7th Cir. 2005)). "Therefore, in the context of Rule 60(b)(4), regardless whether the plaintiff bears the burden of proof of demonstrating sufficient service of process to establish personal jurisdiction over a defendant, once the plaintiff has submitted a signed return of service, the burden shifts to the defendant to demonstrate that it did not receive valid service of process." *Id.*

[16] To the extent the evidence Tenkiang now offers could be considered in the context of his Rule 60(b)(3) motion for fraud, misrepresentation, or misconduct, he has not come close to proving misconduct "by clear and convincing evidence." *See Schultz*, 24 F.3d at 630.

counsel's continuation of litigation on behalf of Plaintiff Julia Ndumu after her passing in July 2024 warrants sanctions. *See* ECF 67.

"Rule 11 imposes a duty on attorneys to certify, on the basis of a reasonable inquiry, that any pleading or paper they file with a district court (1) is not filed 'for any improper purpose'; (2) is 'warranted by existing law'; and (3) alleges facts that 'have evidentiary support.'" *Lokhova v. Halper*, 30 F.4th 349, 354 (4th Cir. 2022) (quoting Fed. R. Civ. P. 11(b)); *see also Bus. Guides, Inc. v. Chromatic Commc'ns Enters.*, 498 U.S. 533, 551 (1991). "[T]he applicable standard is one of reasonableness under the circumstances." *Bus. Guides*, 498 U.S. at 551.

"In evaluating the factual basis for a motion [or assertion], courts evaluate whether there is any factual basis at all; when there is none, the attorney has violated Rule 11(b)(3)." *Williams v. The Ests. LLC*, 663 F. Supp. 3d 466, 474 (M.D.N.C. 2023) (citing *Chaplin v. Du Pont Advance Fiber Sys.*, 124 F. App'x 771, 774 (4th Cir. 2005) (per curiam)). Tenkiang contends that the statement in counsel's affidavit was submitted without adequate evidentiary support. ECF 63, at 2. While Tenkiang disputes the accuracy of the statement—and indeed has presented evidence that he made no such statement to the Delaware court in May 2023—counsel's statement was based on a reasonable reading of a sentence in a report by an investigator. The sentence in the report admittedly could have been written more clearly. But even if counsel's statement was incorrect, it was not offered without evidentiary support and Rule 11 sanctions are not warranted.

Sanctions are also not warranted based on litigation conducted after Ms. Ndumu's death. Counsel filed the motion for default judgment before Ms. Ndumu's passing, and it was granted by the Court about a month after her passing. Counsel notes that "[d]uring the period between Ms. Ndumu's death (July 12, 2024) and Mr. Tenkiang's filing of his Notice (September 30, 2025), the only filings made on behalf of Ms. Ndumu were a Motion for Attorneys' Fees (Dkt. No. 38),

15

Oppositions to Mr. Tenkiang's Motions to Vacate and to Set Aside Default Judgment (Dkt. Nos. 46, 61), and an Opposition to another Rule 11 motion (Dkt. 64), none of which required Ms. Ndumu's input or contact with her." ECF 68, at 2–3. Counsel also notes that "pursuant to counsel's engagement agreement with the plaintiffs, due to the multiplicity of plaintiffs, routine contact with the plaintiffs is conducted through a single point of contact. Ms. Ndumu was not the point of contact, so direct communication with her by counsel would have been unusual." *Id.* at 3 n.1.

The Court measures whether conduct is sanctionable based on the time a pleading or other paper is signed and presented to the Court. *See Kirby v. Allegheny Beverage Corp.*, 811 F.2d 253, 257 (4th Cir. 1987). While true that over a year passed between Ms. Ndumu's passing and counsel's awareness of that fact, much of that time did not involve active litigation. The only relief sought on behalf of Ms. Ndumu after her death was attorney's fees after the Court granted default judgment and ordered counsel to move for attorney's fees—a motion that requires counsel to provide support for counsel's own prior work and little, if any, input from the client. Same goes for the opposition to Tenkiang's motions. Further, the Federal Rules permit the substitution of a party after death. *See* Fed. R. Civ. P. 25(a). Thus, there is no basis to impose sanctions on counsel. *See Hubbard v. Plaza Bonita, LP*, 630 F. App'x 681, 684 (9th Cir. 2015) (affirming sanctions where counsel affixed deceased plaintiff's signature to a settlement agreement); *Barrett v. Medicredit, Inc.*, No. 3:17-CV-3251-B, 2019 WL 1327072, at *18 (N.D. Tex. Mar. 25, 2019) (finding sanctions not warranted under 28 U.S.C. § 1927 and Rule 11 where counsel continued litigating case of deceased plaintiff through discovery where there was no evidence of anything more than negligence on the part of counsel). Tenkiang's motions for sanctions will be denied.

### III. PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO SUBSTITUTE (ECF 70)

Finally, Plaintiffs' counsel moves for extension of time to substitute a representative of Plaintiff Julia Ndumu after her passing. *See* ECF 70. Under Rule 25(a)(1): "If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed." Here, measuring from the time Tenkiang filed the notice of death on September 30, 2025, ECF 66, the deadline to substitute under Rule 25 would be December 29, 2025. Counsel timely moved to extend that deadline on December 22. *See* ECF 70. Under Rule 6(b)(1), which governs motions to extend time, the Court may extend a deadline for good cause. Counsel argues that good cause exists to extend the deadline by an additional 60 days, noting that probate proceedings are pending in the Circuit Court of Prince William County Virginia. *See* ECF 70-1, at 3–4. Tenkiang argues that good cause does not exist to extend the deadline because counsel did not act with diligence between Ndumu's death in July 2024 and September 2025, when counsel notes that he first learned of Ndumu's passing. *See* ECF 72.

It is also worth noting that counsel contends Tenkiang's September 30 notice is not sufficient to trigger the 90-day clock, as Ndumu's successors have not been served with the notice. *See* ECF 70-1, at 3. Tenkiang responds that "Plaintiffs' counsel is barred from arguing that the 90-day substitution clock has not started" because he previously noted in an affidavit that he "understood Mr. Tenkiang's Notice (filed at Dkt. 66) to constitute a 'statement noting the death' as provided in Fed. R. Civ. P. 25(a)(1)." ECF 72, at 1.

17

Even if the notice suffices under Fed. R. Civ. P. 25(a)(1),[17] good cause exists to extend the deadline. Probate proceedings are ongoing. Any delay by counsel between July 2024 and September 2025 does not bear on whether to extend the deadline, which was not triggered before Tenkiang filed the notice (assuming that the notice was indeed sufficient). Dismissing Ndumu's claims would not be in the interests of justice, particularly where the Court has already entered default judgment in her favor. *See Shenandoah Life Ins. Co. v. Hight*, Civ. No. JKB-13-464, 2013 WL 5532879, at *1 (D. Md. Oct. 3, 2013) (declining to dismiss a party from an action where a motion to substitute was not timely made because dismissal was "not in the interests of justice"). The Court will extend the deadline as requested.

## IV.  CONCLUSION

For the foregoing reasons, Tenkiang's motion for relief from judgment, ECF 60, is DENIED; Tenkiang's motions for sanctions, ECFs 63 and 67, are DENIED; and Plaintiffs' motion for extension of time to substitute, ECF 70, is GRANTED.

A separate implementing order will issue.

Dated: February 19, 2026                         /s/
                                                            Brendan A. Hurson
                                                            United States District Judge

---

[17] The motion does not ask the Court to resolve this question.